UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOYCE QUINN and LOREN DICKEY,<br><br>                       Plaintiffs,<br><br>         v.<br><br>PARAMOUNT GROUP, INC., GAGE JOHNSON, ALBERT BEHLER, THOMAS ARMBRUST, MARTIN BUSSMANN, KARIN KLEIN, PETER LINNEMAN, KATHARINA OTTO-BERNSTEIN, MARK PATTERSON, HITISHI SAITO, GREY WRIGHT and PAUL SUTTER,<br><br>                       Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14 AND 20 OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiffs, Joyce Quinn and Loren Dickey ("Plaintiffs"), by their undersigned attorneys, alleges upon personal knowledge with respect to themselves and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein as follows:

## NATURE OF THE ACTION

      1.     This action is brought by Plaintiffs as shareholders of Paramount Group, Inc. ("PGI" or the "Company") against the Company and those individuals who were its directors from March 2022 to April 2024, for their negligent violations of Section 14(a) and 20(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), 4(a) in connection with the issuance of materially defective proxy materials soliciting action from shareholders as described herein in the 2022, 2023 and 2024 proxy statements sent to Plaintiffs and other shareholders.

      2.     The most egregious Section 14 violation was in connection with the 2024 Proxy. In order to induce Plaintiffs and other PGI shareholders to vote in favor of the "Paramount

Group, Inc. 2024 Equity Incentive Plan" ("2024 EIP"), PGI and Defendants drafted, filed with the SEC, and issued publicly and directly to PGI shareholders materially incomplete and misleading proxy materials (the "Proxy Materials") in violation of Sections 14(a) and 20(a) and (b) of the Exchange Act. Once the 2024 EIP was approved, the directors and officers awarded themselves tens of millions of dollars of compensation not available under the predecessor plan.

3. In the 2024 Proxy Materials certain of the Director Defendants (identified herein), recommended that shareholders approve the 2024 EIP. Those Defendants and PGI failed to disclose certain material information that was necessary for shareholders to properly assess whether to vote in favor of the EIP. The non-disclosures of such information rendered the statements in the 2024 Proxy Materials materially false and misleading. Other statements in the 2024 Proxy were affirmatively false and misleading.

4. The 2022 and 2023 Proxies solicited Plaintiffs and other shareholders to elect a slate of directors, all of whom were recommended by the Board, and the 2022, 2023 and 2024 proxies solicited votes in favor of the ratification of Deloitte & Touche, LLP ("D&T") as PGI "independent auditors."

5. The 2022, 2023 and 2024 Proxies solicited Plaintiffs' and other shareholders' votes through materially false and misleading statements which were affirmatively materially misleading and/or misleading materially by non-disclosure of material information concerning the full details of the 2024 EIP plan; total compensation paid to Defendant Behler in 2022, 2023 and 2024; materially significant related party transactions ("RPT's"); and the lack of internal controls.

6. For these reasons, and as set forth in detail herein, Plaintiffs asserts claims against Defendants for violations of Sections 14(a) and 20(a) and 20(b) of the Exchange Act, based on

2

Defendants' violation of Rule 14a-9 (17 C.F.R. 240.14a-9) and seeks damages and/or voiding and rescinding of the election of directors and ratification of as PGI's independent auditors in 2022, 2023 and 2024 and rescinding the approval of the EIP in 2024 and voiding and rescinding all compensation to anyone at PGI awarded thereunder.

7. On July 30, 2025, PGI announced:

> The Division of Enforcement of the U.S. Securities and Exchange Commission (the "SEC") is conducting an investigation into the adequacy of our disclosures concerning executive compensation, perquisites, the use of corporate assets, related party transactions, and conflicts of interest. The investigation also covers possible failures of our controls and procedures relating to the topics of those disclosures. We are cooperating with the SEC. We are unable to estimate the likely outcome of this matter, or a reasonably probable range of potential costs or exposure, or the potential duration of the process, at this time. If the SEC believes that violations occurred, it could seek remedies including, but not limited to, civil monetary penalties and injunctive relief, and/or file litigation against us.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs allege violations of Section 14(a) and 20(a) of the Exchange Act.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant PGI conducts substantial operations in this district and maintains it corporate headquarter here.

## THE PARTIES

**A.    Plaintiffs**

10. Joyce Quinn is and has been a shareholder of PGI since at least December 23, 2021 through the present.

11. Loren Dickey is and has been a shareholder of PGI since at least February 11, 2021 through the present.

**B.    Defendants**

12. Defendant PGI is a publicly traded real estate investment trust. It is incorporated in Maryland and its principal executive offices are located at 1633 Broadway, New York, New York. PGI invests in commercial properties that are net leased to investment grade and creditworthy tenants.

13. As of April 2022, the "Otto Family Group," of which defendant Katharina Otto-Bernstein was member, owned 15.3% of PGI common stock, and defendant Behler owned 1,477,127 of PGI common stock and owned 8.27 million units (of 17,983,351 units outstanding) of the operating parties' units which constituted ownership of approximately 5% of PGI's voting power.

14. Gage Johnson ("Johnson") was at all relevant times the Senior Vice President, General Counsel and Secretary of PGI. In that capacity he signed the 2022, 2023 and 2024 materially false and misleading annual "Proxy Statement & Notice of Meeting" "By Order of our Board of Directors" which were each sent to shareholders in 2022, 2023 and 2024 soliciting the votes for the election of directors, ratification of Deloitte & Touche, LLP appointment as independent auditors in 2022, 2023 and 2024, and for approval of the 2024 EIP in 2024.

15. Defendant Albert Behler ("Behler") joined PGI as President and CEO in 1991. He has been a PGI director since its public debut in 2014 and is/was PGI's Chairman, Chief Executive Officer, President, and the Chairman of the Investment and Finances Committee ("IFC"). Behler authorized and/or signed the 2022, 2023 and 2024 Proxies.

4

16. Defendant Thomas Armbrust ("Armbrust") was director from 2014 through 2025. He was a member of PGI Board's IFC Armbrust authorized and/or signed the 2022, 2023 and 2024 Proxies.

17. Defendant Martin Bussmann ("Bussman") has been a director since 2016 through the present. He is/was a member of PGI Board's Compensation Committee ("CC") and Nominating and Corporate Governance Committee ("NCGC") and its "Lead Independent Director." Bussman signed the 2022, 2023 and 2024 Proxies.

18. Karin Klein ("Klein") has been a director since 2016 through the present and a member of PGI Baord's Audit Committee ("AC"). Defendant Klein signed the 2022, 2023 and 2024 Proxies.

19. Defendant Peter Linneman ("Linneman") has been a director since 2014 to mid-2024. He was a member of the CC. Defendant Linnemann signed the 2022 and 2023 Proxies.

20. Defendant Katharina Otto-Bernstein ("KO-B") has been a director since 2014 but resigned in 2025. Defendant KO-B signed the 2022, 2023 and 2024 Proxies.

21. Defendant Mark Patterson ("Patterson") has been a director from 2018 through the present. He was Chair of PGI Board's NCGC. Defendant Patterson signed the 2022, 2023 and 2024 Proxies.

22. Defendant Hitoshi Saito ("Saito") was elected director in 2022 and serves through the present. Defendant Saito signed the 2023 and 2024 Proxies.

23. Defendant Grey Wright ("Wright) has been a director since 2020 through the present. He was/is Chair of CC and was a member of NCGC. Defendant Wright signed the 2022, 2023 and 2024 Proxies.

5

24. Defendant Paul Sutter ("Sutter") was appointed to the Board in July 2023 and serves through the present. She is/was the Chair of the AC. Defendant Sutter signed the 2024 Proxy.

## SUBSTANTIVE ALLEGATIONS

A. **Background**

25. PGI describes itself as a fully integrated REIT focused on owning, operating, managing, acquiring and redeveloping high-quality, Class A office properties in select central business district ("CBD") submarkets of New York City and San Francisco. Its consolidated subsidiaries, including Paramount Group Operating Partnership LP, a Delaware limited partnership (the "Operating Partnership"), conduct all PGI business. PGI is the sole general partner of and owned approximately 91.6% of the Operating Partnership as of December 31, 2024.

26. PGI was established by Werner Otto whose daughter was a board member during the period in question.

27. PGI became a publicly traded company in 2014. Thereafter it became subject to reporting requirements of the Securities Act of 1933 ("'33 Act") and the Securities Exchange Act of 1934 ("'34 Act").

28. Defendant Behler was an owner/officer/director of PGI since before it went public. By virtue of being PGI's Chairman, Chief Executive Officer, President and Chairman of the IFC, and a major shareholder, he was PGI's most powerful and influential director.

29. PGI's revenues have been steadily declining since 2022:

**PGI REVENUES**

| 2021 | $726,786,000 |
| 2022 | $740,377,000 |

| | |
|---|---|
| 2023 | $742,788,000 |
| 2024 | $610,076,000 |

30. Despite PGI's declining revenues from 2021 through 2024, its fees to D&T were steadily increasing:

**D&T**

| | Audit Fees | Audit Related Fees | Tax Fees |
|---|---|---|---|
| **2021** | $939,802 | $1,386,000 | $1,165,300 |
| **2022** | $1,041,000 | $1,504,000 | $1,169,000 |
| **2023** | $1,092,000 | 1,624,000 | $1,162,000 |
| **2024** | $1,238,000 | 1,547,000 | $1,332,000 |

31. PGI also paid "Other" fees to D&T: 2023 "OTHER" = $160,000; 2024 "OTHER" = $500,000.

32. During the same period, Behler's compensation exploded despite the Company's poor performance.

B. **SEC Reporting Rules**

33. On August 25, 2022, the SEC adopted a final rule on executive compensation disclosure, Item 402(v) of Regulation S-K which applies to proxy statements and information statements for fiscal years ended on or after December 16, 2022. SEC Reg. 17 C.F.R. 229.402 (Item 402)(c)(ix)(A) describes "all other compensation" which must be disclosed to include but not limited to "(A) perquisites and other personal benefits, or property . . ." greater, in the aggregate than $10,000.

34. The SEC has also imposed rules for disclosures of RPTs. SEC Reg. 17 C.F.R. 229.404 (Item 404) "Transactions with related person, promoters and certain control persons" required PGI's proxy statement to "Describe any transaction, since the beginning of the registrants last fiscal year, or any currently proposed transaction, in which the registrant was, or is to be a participant and the amount involved exceeds $120,000 and in which any related person

had or will have a direct or indirect material interest." Instruction to Item 404(a) state "the term related person means":

    (i)    Any director or executive officer of the registrant.

    . . .

    (ii)    Any immediate family member of a director or executive officer.

35. Item 404(b) "Review, approval or ratification of transactions with related persons" required PGI to describe its policies and procedures for review of transactions with related persons ". . . where such policies and procedures were not followed."

36. PGI's 2022, 2023 and 2024 proxies violated <u>all</u> of the foregoing rules.

**C.** **The Proxy Statements And Vote Results At Issue**

37. Each year in April, PGI issued a Proxy Statement to its shareholders noticing the annual meeting in May and each year solicited shareholder votes for its slate of directors and ratifications of D&T as independent auditors.

38. In each Proxy, it stated: "This solicitation of Proxies is made by and on behalf of the Board."

39. In each Proxy, the "Board" recommended a "For" vote for each of the proposals at issue in this suit.

40. The 2022 Proxy Statement solicited shareholders to vote to elect nine director nominees. Eight of the nine directors, defendants Behler, Armbrust, Bussman, Klein, Linneman, Otto-Bernstein, Patterson and Wright "ordered" the 2022 Proxy, which was signed on the Board's behalf by defendant Gage Johnson and asked shareholders to vote to "ratify" the Audit Committee's appointment of D&T as PGI's independent registered public accounting firm for the fiscal year ended December 31, 2022 and to hold an advisory vote on executive officer

8

compensation. All the proposals on the ballot were passed by majority shareholder votes after the Board unanimously recommended shareholders vote "FOR" each proposal.

41. Defendants Johnson, Behler, Armbrust, Bussman, Klein, Linneman, Katherina Otto-Bernstein, Patterson and Wright, approved, signed and/or authored and "By Order of . . . Board of Directors": presented to Plaintiffs and PGI shareholders the "2022 Proxy Statement."

42. In its 2022 Proxy, PGI described "Other Elements of Compensation" including "Perquisites and Other Personal Benefits" in which it represented to shareholders that "We reimburse Mr. Behler for his club memberships up to $20,000 each year and provide him with life insurance coverage of $5.0 million and long term disability insurance . . . and personal use of a company leased car as well as limousine service . . . and an annual car allowance of $15,000 and free parking at the Company's premises."

43. In the 2022 Proxy, Behler's 2021 compensation was a reported $9,746,050, of which $171,050 was reported as "Other Compensation" reportedly consisting of "Life Insurance/Disability Insurance," "401K Company Match," "Car Allowance/Car Insurance" and "Club Membership."

44. The 2022 Proxy Statement made representations about its controls:

> Review and Approval of Future Transactions with Related Persons
>
> Our Board has adopted a Related Person Transaction Approval and Disclosure Policy, included as part of our Corporate Governance Guidelines, for the review, approval or ratification of any related person transaction. <u>This policy provides that all related person transactions must be reviewed and approved by a majority of the independent and disinterested directors on our Board reasonably in advance of us or any of our subsidiaries entering into the transaction</u>. Disinterested directors are directors that do not have a personal financial interest in the transaction that is adverse to our financial interest or that of our stockholders. The term "related person transaction" refers to a transaction required to be disclosed by us pursuant to Item 404 of Regulation S-K (or any successor provision)

9

promulgated by the SEC. <u>This policy was followed for all of the applicable related person transactions described above for which there was new activity during the 2022</u> fiscal year. [Emphasis supplied]

45. In the 2022 Proxy, the only "Related Party Transactions" reported between Behler and PGI was PGI's engagement of Hamburg Trust Consulting ("HTC") and disclosed that it paid HTC $645,000 for fees and expenses in 2021. HTC was 100% owned by Behler.

46. The 2022 Proxy misrepresented the amounts of compensation paid to Behler; misrepresented the RPTs; omitted material information regarding the nature of services provided by D&T; omitted the conflicts presented by the different engagements between PGI and D&T; and misrepresented the controls and policies for monitoring and reporting compensation and RPTs.

47. The 2023 Proxy Statement solicited shareholders to vote to elect ten director nominees all of whom "ordered" the 2023 Proxy to be issued and which was signed by Defendant Johnson and asked shareholders to vote to ratify the Audit Committee's appointment of Deloitte & Touche LLP as PGI's independent registered public accounting firm for the fiscal year ended December 31, 2023 and to hold an advisory vote on named executive officer compensation. All the proposals on the ballot were approved by a majority of shareholders after the Board unanimously recommended Plaintiffs and shareholders vote FOR each proposal.

48. Defendants Johnson, Behler, Armbrust, Bussman, Klein, Linneman, Katherina Otto-Bernstein, Patterson, Saito, Sutter and Wright, approved, signed and/or authored and "By Order of . . . Board of Directors" presented to PGI shareholders the "2023 Proxy Statement."

49. The 2023 Proxy Statement made representations about its controls:

Review and Approval of Future Transactions with Related Persons

Our Board has adopted a Related Person Transaction Approval and Disclosure Policy, included as part of our Corporate Governance Guidelines, for the review, approval or ratification of any related person transaction. <u>This policy provides that all related person transactions must be reviewed and approved by a majority of the independent and disinterested directors on our Board reasonably in advance of us or any of our subsidiaries entering into the transaction</u>. Disinterested directors are directors that do not have a personal financial interest in the transaction that is adverse to our financial interest or that of our stockholders. The term "related person transaction" refers to a transaction required to be disclosed by us pursuant to Item 404 of Regulation S-K (or any successor provision) promulgated by the SEC. <u>This policy was followed for all of the applicable related person transactions described above for which there was new activity during the 2021 fiscal year</u>. [Emphasis supplied]

50. In the 2023 Proxy, Behler's total compensation was reported as $9,325,413, of which $209,413 was reportedly "All Other Compensation" consisting of life/disability insurance, a 401K company match, car allowance, car insurance and club membership.

51. In the 2023 Proxy, Behler's related party transactions were the same as those disclosed in the 2022 Proxy. For 2022, the payment reported in the 2023 Proxy was $713,000.

52. The 2022 Proxy misrepresented the amounts of compensation paid to Behler misrepresented the RPTs; omitted material information regarding the nature of services provided by D&T; and omitted material information regarding the conflicts presented by the different engagements between PGI and D&T; and misrepresented the controls and policies for monitoring and reporting compensation and RPTs.

53. The 2024 Proxy Statement solicited shareholders to vote to elect ten director nominees including Defendants Behler, Armbrust, Bussman, Klein, Otto-Bernstein, Patterson, Saito, Settles, Sutter and Wright who ordered the 2022 Proxy to be issued and which was signed

11

by Defendant Johnson and asked shareholders to vote to ratify the Audit Committee's appointment of Deloitte & Touche LLP, as PGI's independent registered public accounting firm for the fiscal year ended December 31, 2024, to hold an advisory vote as named executive officer compensation, and to approve the Paramount Group, Inc. 2024 Equity Incentive Plan.

54. In soliciting approval for the 2024 Equity Incentive Plan, the Proxy provided an explanation of the compensation practices of PGI which was materially false and misleading due to the failure to disclose all Behler's compensation and which was also affirmatively misleading.

55. Defendants Johnson, Behler, Armbrust, Bussman, Klein, Otto-Bernstein, Patterson, Saito, Settles, Sutter and Wright, approved, signed and/or authored and "By Order of . . . Board of Directors presented to PGI shareholders the "2024 Proxy Statement."

56. The 2024 Proxy Statement made representations about its controls:

> Review and Approval of Future Transactions with Related Persons
>
> Our Board has adopted a Related Person Transaction Approval and Disclosure Policy, included as part of our Corporate Governance Guidelines, for the review, approval or ratification of any related person transaction. <u>This policy provides that all related person transactions must be reviewed and approved by a majority of the independent and disinterested directors on our Board reasonably in advance of us or any of our subsidiaries entering into the transaction</u>. Disinterested directors are directors that do not have a personal financial interest in the transaction that is adverse to our financial interest or that of our stockholders. The term "related person transaction" refers to a transaction required to be disclosed by us pursuant to Item 404 of Regulation S-K (or any successor provision) promulgated by the SEC. <u>This policy was followed for all of the applicable related person transactions described above for which there was new activity during the 2023 fiscal year</u>. [Emphasis supplied]

57. The 2024 EIP, whose vote for approval was solicited by Defendants, contained several additional benefits for executive officers and directors <u>not</u> available to them under the plan being replaced by the 2024 EIP, including that "Incentive and Retention Plan grants made in

12

September 2023" was contingent upon shareholder approval of the 2024 EIP. The total outstanding awards for which PGI solicited approval was 11,630,563 "units' of PGI stock."

58.  Also, under the 2024 EIP, Defendants Behler, Johnson and non-defendant Paes were "allocated" over $7 million of options and stock awards. Defendants Armbrust, Bussman, Klein, Otto-Bernstein, Patterson, Saito, Settles, Sutter, Wright were each "allocated" $120,000 of options and stock awards.

59.  The foregoing were approved when shareholders approved the 2024 EIP.

60.  As a result of the approval of the 2024 EIP by shareholders in May 2024, at the end of calendar year 2024, defendant Behler was awarded stock and option awards of $17,240,000 (approximately).

61.  In the 2024 Proxy, Behler's total compensation was reported as $20,235,912 of which $21,412 was "All Other Compensation" consisting of the same components as reported in the 2023 Proxy.

62.  In the 2024 Proxy, the only "Related Party Transactions" reported between Behler and PGI was $392,000 to HTC but the 2024 Proxy reported also $165,000 to "Kramer Design Services" which is 100% owned by Behler's spouse.

63.  The 2024 Proxy misrepresented the amounts of compensation paid to Behler misrepresented the RPTs; omitted material information regarding the nature of services provided by D&T and the conflicts presented by the different engagements between PGI and D&T and misrepresented the controls and policies for monitoring and reporting compensation and RPTs.

    **D.**    **PGI Reveals For The First Time Over $2.2 Million**
              **Of Previously Unreported RPT And Compensation To Behler**

64.  On April 3, 2025, PGI filed its 2025 Proxy Statement with the SEC. For the first time, PGI reported that it had been paying Behler's "Personal Accounting Services" from at least

2022 through 2024 in the amounts of $251,731, $373, 340 and $285,978, respectively. PGI admitted this constituted "Other Compensation" to Behler.

65. In the 2025 PGI Proxy, PGI also disclosed for the first time "Related Party Transactions" with Behler consisting of payments of $1,667,000 to an aircraft company 50% owned by Behler for the "charter by Behler of aircraft for business purposes."

66. Also, reported for the first time was PGI's payment of $12,000 to "Weingut Karthauserhof KG," a winery 100% owned by Behler for "gifts."

67. This revelation became front page news in the Wall Street Journal.

68. From April 2, 2025, when PGI closed at $4.42 per share, through April 8, 2025 as the market digested news of PGI's disclosures of previously unrecorded compensation and failure of controls, PGI's stock price dropped from $4.42 per share to $3.94 per share on triple its approximately 1.5 million shares average daily trading volume.

69. On July 30, 2025, PGI disclosed the SEC investigation. *See* infra ¶ 7.

E. **The Materiality Of Misrepresentations And Omissions**

70. The materiality of the negligent misrepresentations and omissions in the 2022, 2023 and 2024 arises out of the fact that the 2022, 2023 and 2024 proxies reported materially inaccurate amounts of executive compensation which impaired shareholders' ability to ascertain the integrity and fairness of PGI executives' compensation as reported in the compensation analysis section of each Proxy. In addition, in evaluating the proposal to approve the 2024 EIP, the inaccurately reported executive compensation misrepresented the rationale and pros and cons of the 2024 EIP. The omissions described herein also deprived shareholders of material information regarding the costs to PGI of the replanning and existing compensation with the 2024 EIP. The failure to accurately report executive compensation in PGI's audited financial

14

statements also made the Proxies' statements concerning ratification of D&T materially false and misleading.

71. The materiality of the statements and omissions in the 2022, 2023 and 2024 Proxies are also demonstrated by the wide divergence in shareholder voting in 2025 <u>after</u> the April 2 disclosures, compared to voting patterns in 2024.

72. The 2025 Proxy solicited shareholders' votes on (a) eight director nominees; (b) an advisory vote on named executive officer compensation; (c) ratification of D&T as PGI's "independent registered public accounting firm for year ending December 31, 2025; and (d) any other matters brought before the annual meeting.

73. The Proxy was mailed to stockholders "on or about" April 3, 2025 for the May 15, 2025 annual meeting.

74. The April 2025 proxy acknowledged that the CEO's pay was higher than previously reported. Behler's annual compensation in 2022 and 2023 was hundreds of thousands of dollars more than the company reported last year. Behler made $20.8 million in 2023 and $9.8 million in 2022, above the $20.2 million and $9.3 million that the company reported last year. The revised compensation numbers in this year's filing are "due to a reclassification of certain payments," the April 2025 filing said.

75. The materiality of the undisclosed compensation to Behler and his unreported RPTs was immediately apparent because on May 25, 2025 the day of the annual meeting PGI announced the departure, effective immediately of Wilbur Paes, the Company's Chief Operating Officer, Chief Financial Officer and Treasurer and Defendant Gage Johnson, Senior Vice President, General Counsel and Secretary.

76. The vote count also reflected the materiality of the previously unreported compensation and RPTs. Behler received 53,619,563 votes against, Behler received over 7 million "abstentions," while six board members all received less than 4,000 each. Bussman, lead independent director and chair of the NGC, received over 60 million votes against.

77. In the 2024 election, Defendant Behler received 6,225,358 votes against his reelection and 21,658 abstentions. In the 2024 election Defendant Behler received 6,439,744 voted against his reelection and 376,207 abstentions.

78. In 2025, the vote to ratify D&T received 15,766,426 votes against. In 2024, the vote against ratification was 5,916,813. In 2023 the vote against was 6,390,914.

79. Finally, the materiality of the misstatements and omissions is amply demonstrated by the collapse of PGI's stock price from April 2, 2025 close of $4.42 per share to $3.94 per share on April 8, 2025 on triple the average daily share volume.

## COUNT I

**(Against PGI For Violations Of Section 14(a) Of The Exchange Act And Rule 14(a)-9 Promulgated Thereunder For False And Misleading Statements In Proxy Materials)**

80. Plaintiffs incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

81. Section 14(a) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

16

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

82. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240. 14a-9.

83. SEC Rule 14a-9(b), 17 C.F.R. § 240.14(a) states: "the fact that a proxy statement has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete."

84. PGI issued the Proxy Materials and/or the individual defendants permitted the use of their names in the Proxy with the intention of soliciting shareholder support for the resolutions.

85. The Individual Defendants should have known that the Proxy was materially false and misleading in regard to the above-referenced material information.

86. As directors and/or officers, the Individual Defendants had a duty to carefully review the Proxy—particularly those sections purporting to describe their own actions, relationships and beliefs—and to ensure that the Proxy did not omit material facts and contain materially misleading statements.

87. The Proxy Statements were defective and in violation of SEC Rule 14 and Rule 14a-9 because they contained untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading as more fully set forth herein.

88. The misrepresentations and omissions in the Proxy Materials were material to Plaintiffs, who was solicited to vote in favor of the proposals.

89. The defects in the proxy statements for 2022, 2023 and 2024 would have been considered important by a reasonable shareholder who was in the process of deciding how to vote on each of the proposals at issue herein and would have been viewed by a reasonable investor as having significantly altered the total mix of information made available.

90. The omitted and misrepresented information cast material doubt upon defendants' statements about control systems, compensation and practices, compensation costs and RPTs that a reasonable shareholder would have considered those important in deciding how to vote.

91. The proxy solicitations for election of directors, ratification of D&T and approval of the 2024 EIP were essential links in the accomplishment of PGI's Board recommendations for election of directors, ratification of D&T and approval of the 2024 EIP and compensation awards thereunder.

92. A majority of votes of outstanding stock was required to approve each proposal at issue herein.

93. The value of Plaintiffs' stock and Plaintiffs' corporate franchise rights were injured and damaged by Defendants' actions.

94. As a direct and proximate result of issuing the defective Proxy Materials, negligent acts and omissions detailed herein, Plaintiffs has suffered damages in connection with the approval of the proposals made in the Proxies.

**COUNT II**

**(Against Director Defendants
For Violations Of Section 20(a) Of The Exchange Act)**

95. Plaintiffs incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

96. The as controlling persons of PGI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions and due to their participation in and/or control of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Materials filed with the SEC, had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the Proxy Materials that Plaintiffs contends are materially incomplete and misleading.

97. The Controlling Defendants were provided with or had unlimited access to copies of the Proxy Materials and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

98. In particular, the Controlling Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.

99. By virtue of the foregoing, Controlling Defendants have violated Section 20(a).

100. As a direct and proximate result of issuing the defective Proxy Materials, Plaintiffs and other members of the Class have suffered damages in connection with the

proposals being made in the Proxy relating to approving the Merger and 3rd Advisory Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demands judgment as follows:

A. Awarding Plaintiffs, the amount of damages sustained as a result of PGI's materially false and misleading proxies;

B. Voiding the results of the 2022, 2023 and 2024 shareholder votes on the proposals at issue herein;

C. Rescinding the 2024 EIP and rescinding all compensation awards made thereunder;

D. Awarding to Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses;

E. Granting such other and further relief as the Court deems just and proper.

Dated: August 8, 2025

**SQUITIERI & FEARON, LLP**

By: _____
Olimpio Lee Squitieri
205 Hudson Street
7th Floor
New York, New York 10013
Tel: (212) 421-6492
Fax: (212) 421-6553

**MOORE LAW, PLLC**
Fletcher Moore
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8245
Facsimile: (917) 634-3035
fletcher@fmoorelaw.com

Attorneys for Plaintiff